HEARD APRIL TERM, 1872.

### CROTWELL *vs.* BOOZER.

A decree for sale of decedent's real estate, consisting of his residence and the lot on which it stood, was made in April, 1868, for payment of his debts, and the sale was made by the Commissioner in November, 1868, without reservation to the widow and infant children of decedent, of the homestead exemption under paragraph 7 of the military order known as Order No. 10, which, by their answers, they claimed. Two of the debts, to satisfy which the sale was made, were for purchase money of the homestead. The widow opposed the confirmation of the sale on the ground that the residence and lot were exempt from sale under said order: *Held*, That the claim of the widow and children was unfounded in law, and that the sale should be confirmed.

Order No. 10 expired by its own terms when the civil government of the State was established under the Constitution of 1868. Paragraph 7 of the order conferred, *proprio vigore*, no vested right of homestead, and after it had expired could not be enforced by the officer making a sale.

BEFORE MOSES, J., AT NEWBERRY,            TERM, 1871.

The case is stated in the Circuit decree, which is as follows:

MOSES, J. A motion to confirm the sale of a house and lot made by the late Commissioner in Equity for Newberry, by virtue of a decretal order in this case, dated the      day of April, 1868. The defendants objected.

Before entering upon a discussion of the merits of this controversy, it is important to review the facts upon which it is founded.

In March, 1867, the plaintiff filed his bill against the defendants, alleging that he was the administrator of the personal estate of one Frederick S. Boozer, deceased, whose estate in his hands was not sufficient for the payment of his debts, and praying that a certain house and lot in the town of Newberry, belonging to the estate of his intestate, might be sold to pay debts, a considerable portion of which said indebtedness grew out of two sealed notes, each for $769, which had been given to secure the purchase money of the said house and lot.

Jane E. Boozer, the widow of the said Frederick S. Boozer, and his two infant daughters, in their answers to the bill, formally demanded the said house and lot under paragraph 7, of General Orders No. 10, dated the 11th day of April, 1867, issued by Maj. Gen. Daniel E. Sickles, as Commander of the 2d Military District; and the said Jane E. Boozer, the widow, prayed in her answer, if the claim of homestead should be disallowed, then, that she might have laid off to her, her dower in said house and lot of land.

The cause came on to be heard before Chancellor Johnson, in September, 1867, and on the 22d day of April, next ensuing, he filed his decree, wherein he decided that the question of homestead raised by the defendants was a proper one for the officer making the sale, and allowed the widow to sue out her writ of admeasurement of her dower whenever she saw proper. This last she did. The house and lot were sold by Silas Johnstone, as Commissioner in Equity, in November, 1868, and James Y. Harris became the purchaser at the price of twenty-two hundred dollars, and complied with the requirements, taking title therefor.

The Commissioner directed the Sheriff in writing to deliver possession of said house and lot to the purchaser, James Y. Harris. The defendants refused possession; written notice was served upon them that an application would be made to his Honor Chancellor Johnson, at Chambers, in December, for an attachment to enforce the delivery of possession. To this the defendants replied by a regular return, and at the hearing, the Chancellor made the rule absolute. From this order of attachment the defendants appealed, and upon a hearing of their grounds of appeal, the Supreme Court of this State reversed the Chancellor's order making the rule of attachment absolute, intimating that the true time to canvass the question of homestead would be upon the report of

(a) See the case reported 1 S. C., 271.

sales coming in for confirmation (*a*). And now this report of sales is sought to be confirmed.

The grounds relied upon by the defendants are that the homestead, under the General Orders No. 10, and General Orders No. 164, was a vested estate, and that the same cannot be destroyed, and that although their estate of homestead was not recognized by the officer making the sales, yet the same was not affected thereby, for the General Orders are imperative, not even allowing them to disclaim it.

The plaintiff contends that the General Orders, Nos. 10 and 164, were only temporary, intended merely to be of force until the State government was again restored. That by the very terms of the Act of the General Assembly of this State, "To quiet rights under military orders," it is expressly provided that the same shall be unquestioned in the Courts of this State, except when inconsistent with the Constitution. The estate of homestead cannot exist in lands where the purchase money has not been paid.

The controversy is not by any means devoid of interest. Novel, but exceedingly important results are involved. Hence very great care is devolved upon the Court in adjudicating the rights here contested.

Had the sale been made in April, 1867, after the promulgation of the "General Orders" referred to, what would have been the effect? Very clearly the homestead would have been laid off. The officer making the sales could not have disregarded it. The persons for whom it was designed could not by any act of theirs defeat it. Well, having been set apart, would the subsequent action of the State authorities in the adoption of homestead laws, now of force, have divested the estate of homestead vested under the military orders? It would be exceedingly difficult to adduce valid grounds for such a conclusion. To effect this, we must conclude that the military commanders were exercising powers not properly belonging to them; in plain language, were assuming power in the promulgation of such orders.

We must conclude that in case the homestead had been set apart by the officer making the sales, while the "General Orders" were of force as laws, that no subsequent action of our State authorities could have divested rights acquired thereby. If this be so, what difference is there between the case supposed and the one that we are considering? By the express language of the orders, no sales should be made by Sheriff or other officers without laying off homesteads, and no act of the parties could defeat the estate of home-

stead. While the orders were in force, this widow and her infant daughters demanded the shelter afforded by these military orders. They retained continuously the possession of that homestead. They will retain it.

But admitting, for argument's sake, that the claim of homestead set up by the defendants would be defeated, if inconsistent with the provisions of the Constitution of this State, how is it made to appear that this claim is inconsistent therewith? True, it is not an estate of homestead therein provided. Homesteads which had no prior existence, are derived from that instrument—they have no other foundation. How does it appear that a claim of homestead derived through a different source can be inconsistent with one therein provided? There is no provision therein made restricting the estate of homestead for heads of families in this State, to those expressly created thereunder. With this view of the law and facts, I feel constrained to refuse the motion.

It is therefore ordered and adjudged, that the motion to confirm the sale of the house and lot described in the pleadings be dismissed.

Crotwell, the plaintiff, and Harris, the purchaser of the land, appealed from the decree on the following grounds, to wit:

I. Because his honor the Circuit Judge erred in refusing to confirm a sale made by virtue of an order emanating from a Court of competent and proper jurisdiction, directing, after a full and fair hearing of the cause, such sale to be effected, from which no appeal was made.

II. Because the sale of the said lot of land, the confirmation of which has been refused by the decree herein appealed from, was made on the first Monday in October, 1868, after the adoption of the present Constitution of the State of South Carolina, and under its authority—so that, at that sale no homestead could have been allowed, or laid off to the defendants in said lot of land, under the Military Orders, Nos. 10 and 164, at that time superseded by the adoption of the Constitution; and the sale reported should have been confirmed.

III. Because, by the provisions of the Act (No. 41) of the General Assembly of the State of South Carolina, entitled "An Act to quiet rights vested under Military Orders," no rights or titles under such orders, even those that had become vested thereby, are validated, if inconsistent with the Constitution and legislation consis-

tent therewith; and by the provisions of said Act all rights acquired by the defendants under the Orders Nos. 10 and 164, are divested, even if they had ever vested, so far as they were inconsistent with the Constitution, and therefore the said sale should have been confirmed.

IV. Because the assertion of a right of homestead by the defendants out of the lot of land sold under an order in these proceedings, against a creditor for the purchase money of that lot of land, is in direct conflict with the Constitution of this State, which provides that no property shall be exempt for homestead from sale for the payment of obligations contracted for the purchase money of the lands in which homestead is claimed; and also with the Act of the General Assembly (No. 41,) 1868, entitled "An Act to quiet rights vested under Military Orders;" and, therefore, the decree of the Circuit Judge, refusing the confirmation of the sale of the lot of land, as reported, because of the defendants' claim of homestead, should be reversed.

VI. Because all Military Orders, Nos. 10 and 164 included, were only temporary in their operation, and vested no rights, except such rights as were subsequently confirmed.

*Baxter*, for appellant.

*Fair*, contra.

Nov. 20, 1872.   The opinion of the Court was delivered by

MOSES, C. J.   The Circuit Judge refused to confirm the sale of the premises referred to in the pleadings because a right of homestead therein was vested by the General Order of General Sickles, commanding the Second Military District, (comprising the States of North and South Carolina,) numbered 10, and dated April 11th, 1867, in the defendants, the widow and children of the intestate, as whose property, by proper proceedings, it was ordered to be sold. It appears to be conceded that the indebtedness towards which, in part, the proceeds of the sale were to be applied, arose out of two sealed notes which had been given to secure the purchase money of the said premises. As the Constitution, by the 32d Section of the 2d Article, withholds the right of homestead in property sold to meet the obligations "contracted" for its purchase, if the claim of these defendants cannot be sustained on the ground set forth in the Circuit decree, it must fail.

It is not necessary to inquire as to the effect of a homestead

allowed by the said order so far as relates to the duration of any exemption granted under it, for in regard to the property directed to be sold by the decree of April 22, 1868, no order had been previously made in any way conferring it. The naked question before us is, as to the effect of the said military order at the time the sale was directed by Chancellor Johnson. The order of General Canby (No. 164) only modified the character of the exemption, and in no other way changed or qualified the previous order of General Sickles to which it related.

It cannot be claimed that, by the force of its own operation, it forever exempted from sale the property in terms reserved by it, for if this concession is made, it would stand as the permanent law of the land, overriding the Constitution and all Acts which the wisdom of the Legislature might have provided in regard to homesteads. Suppose the Constitution of April, 1868, instead of permitting them, under certain restrictions and limitations, had entirely forbidden their existence, could it be contended for a moment that at a sale made after this instrument took effect, they could still be claimed and exacted by virtue of the Military Order No. 10? If it can, then the same validity must be extended to all the other provisions of the same order, and the pretence that it could do this would certainly be remarkable, at least for its boldness.

The military order in question was only temporary in its duration. Its provisions are so expressed on its face, in the most unmistakable terms, as follows : " They will continue in force, with such modifications as occasion may require, until the civil government of the respective States shall be established in accordance with the requirements of the government of the United States." At the time when the sale was made there was no right of homestead existing save that provided by the Constitution and the Act of September 9, 1868, entitled "An Act to perpetuate the homestead," (14 Stat., 19.) The first, in express language, provides " that no property shall be exempt from attachment, levy or sale for taxes or for payment of obligations contracted for the purchase of said homestead, or the erection of improvements thereon ;" and the third Section of the Act referred to repeats the prohibition almost in the same language. The constitutional inhibition would have been sufficient, but the Legislature, that it might not be lost sight of by those who would be called on to execute the Act, again brought it to their notice. The judgment of the Circuit Court treats the right of these defendants as a vested one under the order. Such is not the fact. By the terms of the

order, "the excepted property of the defendant is to be ascertained by the Sheriff, or other officer enforcing the execution, who shall describe the same and report it to the Court in each case." No title could therefore vest until the extent and character of the property designated as the homestead had been laid off and reported to the Court. This was not done in the case here, and before the sale was ever directed the effect of the military order was superseded by the Constitution. If the examination of the case had required us to hold that the provisions of the said order, by their own force, conferred rights on the person in whose favor they were designed, it would at least be very questionable whether these defendants, the widow and children, could avail themselves of a reservation which is to be made on the sale "of the property of any defendant who has a family dependent on his or her labor."

It is ordered that the order of the Circuit Judge dismissing the motion for a confirmation of the sale of the house and lot described in the pleadings be set aside, and that the case be remanded to the Circuit Court for the County of Newberry, for the proper orders to carry out the judgment now pronounced.

*Willard,* A. J., and *Wright,* A. J., concurred.